IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **BORINQUEN BISCUIT CORP.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **M.V. TRADING CORP., ABC INSURANCE CO.,** <br><br> **Defendant.** | CIVIL NO.: 04 OCT -7 PM 3:02 <br><br> REQUEST FOR TRIAL BY JURY <br><br> TRADEMARK INFRINGMENT; UNFAIR COMPETITION; DILUTION AND REQUEST FOR INJUNCTIVE RELIEF |

RECEIVED & FILED
CLERK'S OFFICE
U.S. DISTRICT COURT

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION

**TO THE HONORABLE COURT:**

**COMES NOW** plaintiff Borinquen Biscuit Corp. ("Borinquen") and submits this memorandum in support of its request for preliminary injunctive relief to restrain Defendant, M.V. Trading Corp. ("M.V. Trading") from distributing products with the "Ricas" trademark or any other mark or trade dress that is in any way likely to cause confusion, to cause mistake or to deceive as to the affiliation, connection or association of Borinquen with M.V. Trading or as to the origin, sponsorship or approval of M.V. Trading's goods by Borinquen.

**I.     NATURE OF THE CASE**

Borinquen has filed a verified complaint were it is alleged that M.V. Trading's use of the "Ricas" mark and confusingly similar trade dress infringes Borinquen's "Rica" trademark and trade dress rights under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and intentionally misappropriates the good will of Borinquen's registered trademark and trade dress by creating a likelihood of confusion concerning the Borinquen's products as well as to the source, sponsorship, association and/or approval of M.V. Trading's products by Borinquen. We must note that Borinquen "Rica" trademark is used for the manufacture, sale and distribution of crackers and

cookie products. M.V. Trading is currently distributing and using the mark "Ricas" for its cookies products, as well. Based on the discussion set forth herein, there is no doubt that a preliminary injunction against defendant is warranted.

## II. STATEMENT OF FACTS

Sunland Biscuit Company Inc. and later on its assignee-registrant Borinquen have used the mark "Rica" in interstate commerce since 1962, in connection with the manufacture, sale, distribution and marketing of crackers and cookie products. On July 3, 1968, Sunland Biscuit Company, Inc. filed an application for registration of the mark "Rica" in the United States Patent and Trademark Office. On September 2, 1969, said mark was registered in the United States Patent and Trademark Office on the Principal Register (Registration No. 876148) covering the use of said mark on the sale, distribution and advertising of crackers and cookie product. (Class No. 30 ). Said registration was validly assigned by Sunland Biscuit Company, Inc. to plaintiff Borinquen by means of a written assignment dated November 12, 1976. Said assignment was recorded in the United States Patent and Trademark Office and Borinquen continues to be the owner of said U.S. Trademark Registration. **(See Exhibit A of Complaint).**

On November 21, 2000, Borinquen filed an application for the registration of the design (logo) and mark "Rica" in the Puerto Rico Department of State in connection with the sale, distribution and marketing of crackers and cookie products. Said mark was recorded in the Puerto Rico State Department and Borinquen continues to be the owner of said P.R. Trademark Registration. (Registration No. 53478). **(See Exhibit B of Complaint).** The federal and state registrations for the "Rica" crackers are currently outstanding and valid.

Since 1962, Sunland Biscuit Company, Inc. and later on its assignee-registrant Borinquen, has sold its crackers and cookie products in a package consisting of red letters on a

white background. Both federal and state registrations include the drawing of the logo used by Borinquen. **(See Exhibit C of Complaint)**.

Currently, the "Rica" cookies manufactured and distributed by Borinquen are being sold, distributed and marketed by Borinquen in the Virgin Islands, St. Marteen and the United States, particularly in Florida, Pennsylvania, New York, New Jersey and Connecticut.

Borinquen is not aware of any other company (other than defendant) using the word "Rica" or a variant thereof in the sale, distribution and advertising of crackers. The U.S. Patent and Trademark Office as well as the Puerto Rico State Department do not identify any other "Rica" mark for crackers in the International Class 30. (See Exhibit D)

Based on Borinquen's advertising, sales and wide popularity, the "Rica" trademark and trade dress for crackers have acquired secondary meaning so that any product and advertising bearing such marks and trade dress are immediately associated by consumers, the public and the trade as being a product of Borinquen. Borinquen has gone to great lengths to protect is name and enforce the "Rica" trademark.

On or about July of 2004, Borinquen learned that M.V. Trading is distributing and using the mark "Ricas" to identify its crackers and cookie products, prominently displaying the mark "Ricas" on the goods. M.V. Trading is packaging its cookie products in a red and white packaging, identical or strikingly similar to Borinquen's packaging. The spurious marks or designations used by the Defendant in interstate commerce are identical with, or substantially indistinguishable from the "Rica" trademark. **(See Exhibit E of Complaint)**.

The "Ricas" crackers distributed by Defendant were advertised in the newspaper "El Nuevo Día" on July 29, 2004 and later, on August 5, 2004. **(See Exhibit F of Complaint)**.

Mr. Antonio Rodríguez-Zamora, president of Borinquen, upon learning of the distribution by M.V. Trading of "Ricas" crackers, immediately contacted Mr. Jaime Mosquera,

Vice-President of M.V. Trading. Mr. Antonio Rodríguez-Zamora advised Mr. Jaime Mosquera of Borinquen's federal and state registrations of the trademark "Rica" and of the impact M/V Trading's distribution of crackers named "Ricas" would cause to the sales of Borinquen "Rica" crackers. Mr. Jaime Mosquera promised to have an answer by the week. No answer was received by Mr. Jaime Mosquera.

On August 19, 2004, Borinquen, through its attorneys, formally notified Mr. Jaime Mosquera that its mark "Rica" is registered in the U.S. Patent and Trademark Office as well as in the Puerto Rico State Department. Plaintiff requested defendant to cease and desist from its acts of trademark and trade dress infringement immediately. Borinquen requested a response by August 30, 2004. **(See Exhibit G of Complaint)**.

On August 31, 2004, M.V. Trading Corp. refused Borinquen's demand. M.V. Trading has actual notice of Borinquen's registrations, but defendant has refused to cease such acts of trademark and trade dress infringement. (A copy of M.V. Trading's answer to plaintiff's cease and desist letter is attached hereto and marked as Exhibit H). Borinquen has no control over the nature and quality of the products sold by Defendants.

## III. ARGUMENTS

### A. Requirements for a preliminary injunction

A party seeking a preliminary injunction must establish that (1) it is substantially likely to succeed on the merits of its claim; (2) absent the injunction there is "a significant risk of irreparable harm"; (3) the balance of hardships weighs in its favor; and (4) the injunction will not harm the public interest. **I.P. Lund Trading v. Kohler Co.** 163 F.3d 27, 33 (1st Cir. 1998). (See also, **Geoffrey, Inc. v. Toys 'R Us, Inc. (Nosotros somos los juguetes)**, 756 F. Supp. 661, 664-665 (D.P.R. 1991). A preliminary injunction is available in trademark infringement cases under the Lanham Act. Section 34 of the Lanham Act, 15 U.S.C. § 1116, specifically provides that:

> The several courts vested with jurisdiction of civil actions arising under this Act shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under section 1125(a) of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

As it will be shown, Plaintiff satisfies the First Circuit quadripartite test for injunctive relief. Accordingly, the Court should grant Borinquen's request for a preliminary injunction and order M.V. Trading to refrain from distributing and using the "Ricas" mark in cookie products or any other designation and trade dress confusingly similar to Borinquen "Rica"'s trade dress in connection their sales, marketing and distribution of "Ricas" cookies.

1. **THERE IS A SUBSTANTIAL LIKELIHOOD THAT BORINQUEN WILL SUCCEED ON THE MERITS ON THE CLAIMS OF (A) TRADEMARK INFRINGEMENT, (B) UNFAIR COMPETITION AND (C) DILUTION.**

    A. <u>Trademark Infringement</u>

To prevail in an action for trademark infringement plaintiff must establish that: (1) he uses and thereby owns a mark; (2) the defendant is using the same or a similar mark; and (3) the defendant's use is likely to confuse the public, thereby harming the plaintiff. **STAR Financial Services, Inc. v. AASTAR Mortgage Corp.**, 89 F.3d 5, 9 (1 Cir. 1996).

As to the first threshold requirement, it is undisputed that Borinquen has used the trademark "Rica" for the manufacture, marketing, distribution and sales of cookie products since

1962. The federal and state registrations for the trademark "Rica" are owned by Borinquen and are currently outstanding and valid.

As to the second threshold requirement to prevail in a trademark infringement action, we must examine whether M.V. Trading uses the same or similar mark of Borinquen. To determine whether the marks in question are similar for trademark infringement purposes, the First Circuit has looked at the appearance and spelling of the competing marks, their pronunciation, packaging and coloring. *See*, **Pignons S.A. de Mecanique de Precision v. Polaroid Corp.**, 657 F.2d 482, 487 (1st Cir. 1981), **Volkswagendwerk Atkiengesellschaft v. Wheeler**, 814 F.2d 812, 817 (1 Cir., 1987). "Similarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." **Boston Athletic Ass'n v. Sullivan**, 867 F.2d 22, 29 (1st Cir. 1989). (*citing* **Pignons S.A. de Mecanique de Precision**, 657 F.2d at 487). The test of consumer confusion "is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general impression."). **Veryfine Products, Inc., v. Colon Brothers, Inc.**, 799 F. Supp. 240, 251 (D.P.R. 1992). (*quoting* **RJR Foods, Inc., v. White Rock Corp.**, 603 F.2d 1058, 1060 (2d Cir. 1979).

It is uncontested that M.V. Trading uses the same mark as Borinquen. The only difference between the two marks is that M.V. Trading uses the letter "s" after the word "Rica". M.V. Trading uses the exact same colors, red and white, in its packaging and both trademarks use the exact same dominant word in their names: "Rica". Defendant's copying of Borinquen's dominant word is telling because:

> in order to constitute an infringement it is not necessary that the trademark be literally copied. Neither is it necessary that every word is appropriated. There may be infringement where the substantial and distinctive part of the trademark is copied or imitated." See **Jordan K. Rand Ltd. v. Lazoff Bros., Inc.**, 537 F. Supp. 587, 595 (D.P.R. 1982) (Citing **Queen Mfg. Co. v. Isaac Ginsberg & Bros.**, 25 F2 284 (8 Cir. 1928).

In this case, Defendant chose to use the distinctive part of Borinquen's registered trademark by using the word "Rica" to designate its cookie products. M.V. Trading's mark "Ricas", has similar pronunciation, identical coloring and very similar packaging and pronunciation as Borinquen.

As to the third element of the trademark cause of action, likelihood of confusion, this is the central issue in determining whether there is trademark infringement. **International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center**, 103 F.3d 196, 200 (1st Cir. 1996); **Veryfine Products, Inc.**, 799 F. Supp. 240 at 250.

Section 32(1)(a) of the Lanham Act governs claims for infringement of registered marks. It provides that a person is liable for trademark infringement if the person reproduces, counterfeits, copies or colorably imitates a registered trademark where such use is likely to deceive or cause confusion or mistake." 15 U.S.C. § 1114(1)(a); **Nutrasweet Co. v. Venrod Corp.**, 982 F. Supp. 98 (D.P.R. 1997).

There are three kinds of confusion proscribed by the Lanham Act, all of which are present in the case at bar:

> The first is simple product confusion, which occurs when consumers might purchase a defendant's infringing product thinking it was plaintiffs'. The other type of confusion is that of source or sponsorship, which arises when a consumer might believe that the plaintiff has approved or sponsored the defendant's product. The third main type of confusion is known as subliminal trademark association, which exists when a defendant is able to gain a foothold in the plaintiff's market by exploiting subliminal or conscious association with plaintiff's protected name, mark or trade dress. See, **Veryfine Products, Inc.**, 799 F. Supp. at 251.

In **Pignons S.A. de Mecanique de Precision**, 657 F.2d at 487, the First Circuit held that the following eight factors must be considered in determining whether there is likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship of the parties' advertising; (5) the

classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the mark. The First Circuit has adopted and continues to follow the **Pignons S.A. de Mecanique de Precision** formulation. *See* **I.P. Lund Trading**, 163 F.3d at 43, **Boston Athletic Ass'n**, 867 F.2d at 28; **Star Financial Services**, 89 F.3d at 10; **Volkswagendwerk Atkiengesellschaft**, 814 F.2d at 817. None of these factors is necessarily controlling, but all of them must be considered. **Star Financial Services**, 89 F.3d at 10.

As will be shown, these factors demonstrate that M.V. Trading's use of the "Ricas" trademark will cause a substantial likelihood of confusion with Borinquen's "Rica" trademark for cookies and crackers, is likely to cause confusion as to the source or sponsorship of these crackers and creates a subliminal trademark association that allows M.V. Trading to gain a foothold in the plaintiff's market by exploiting subliminal or conscious association with plaintiff's protected name, mark or trade dress. We will examine each of the factors in turn.

1. Similarity of the Marks.

As discussed in subsection "C" above, it is undisputed that the "Ricas and "Rica" marks are very similar. Similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features. **Perfumania, Inc. v. Perfulandia, Inc.**, 279 F. Supp. 2d 86, 98 (D. Puerto Rico 2003) (*citing* **Pignons**, 657 F.2d at 487). Words may be recognized as similar because of sound, appearance, and meaning, and a finding of similarity may be based on appearance alone. **Id.** (citations omitted)

In the case at bar, plaintiff's registered trademark "Rica" and M.V. Tradings mark "Ricas" is similar in sound and appearance. We should note that the only difference in sound between the two words is an "s". Furthermore, the color of the letters used for the mark is identical. Thus, based on the "total effect" of the marks, the similarity between the two marks is quite strong and significant. *See* **Perfumania Inc.**, 279 F. Supp at 99 (finding similarity in sound and appearance between the

mark "Perfumania" and "Perfulandia"). See also **Star Financial Services**, 89 F.3d at 10 (finding that the designations "STAR Mortgage" and "AASTAR Mortgage" could be sufficiently similar to cause confusion as to the source of the products.)

2. Similarity of the Goods.

Borinquen Biscuit manufactures, sells, distributes and markets crackers and cookie products under its registered mark "Rica" since 1962. M.V. Trading is using the mark "Ricas" to identify its crackers and cookie products. Both companies offer the same goods being in direct competition with each other. This factor indisputably indicates likehoood of confusion. **Star Financial Services**, 89 F.3d at 10.

3. Channels of Trade, Advertising and Classes of Prospective Purschasers

We examine all of these factors jointly in accordance with First Circuit precedent. **Perfumania, Inc.**, 279 F. Supp. At 99. (citations omitted). When considering the relationship with the parties' channels of trade, the Courts have looked at the means by which the goods are distributed as well as the establishments or sales outlets through which they are distributed (eg. Supermarkets, pharmacies, etc.). See, **Boston Athletic**, 867 F.2d at 30; **Pignons S.A. de Mecanique de Precision**, supra; **Nutrasweet**, 982 F. Supp. at 102; **Veryfine Products, Inc.**, 799 F.Supp at 253.

In the instant case, the channels of trade and classes of prospective purchasers are identical. Since "Rica" and "Ricas" are currently used to designate crackers, they are dispensed to the public in supermarkets *in the same aisles*. In light of the above, it is undisputed that "Rica" and "Ricas" are distributed through the same distribution chain, a fact that contributes significantly to the likelihood that the products could be confused or that the purchaser may be mistaken as to the source or sponsorship of the competing products. In this regard it should be noted that the purchasing public does not normally know the source of the article. It suffices that the public

normally assumes that articles bearing the same mark are from the same source." *See* **Boston Athletic**, 867 F.2d at 31 (footnote). "Rica" and "Ricas" crackers target the exact same class of prospective customer, cookie eaters.

Likehood of confusion is increased when the plaintiff's consumers are not sophisticated. *See* **Mead Data Central, Inc. v. Toyota Motor Sales**, 875 F.2d 1026, 1036 (2nd Cir. 1989 ("Where the plaintiff's consumers are sophisticated, there is a reduced likelihood that a junior mark will blur the senior mark's selling power.") It has been held that purchasers of grocery stores foods exercise a lesser standard of purchasing care. *See* McCarthy, **McCarthy on Trademarks and Unfair Competition** § 23:95 (4th ed. 1998). ("Purchasers of relatively inexpensive goods such as ordinary grocery store foods are held to a lesser standard of purchasing care." The products at issue are inexpensively priced crackers. The fact that their names are almost identical and that they are located in the same aisles at grocery stores increases likehood of confusion since we are dealing with consumers that do not exercise great care when buying the product.

Furthermore there is "evidence of overlap in [the parties'] advertising strategies and targets". *See* **Star Financial Services**, 89 F.3d at 10; **Volkswagendwerk Atkiengesellschaft**, 814 F.2d at 818 and **Veryfine Products, Inc**, 799 F.Supp at 253. In particular, the **Volkswagenwerk** Court found there was an increased likelihood of confusion in light of the fact that both parties targeted the same class of prospective customers (owners of Volkswagen cars) and advertised that they specialized in the same kinds of goods and services (Volkswagen repairs). The courts have also focused on the geographical area where the advertising is done. **Star Financial Services**, 89 F.3d at 10; **Geoffrey Inc.**, 756 F.Supp at 666.

It is clear that the relationship between Borinquen and Defendant M.V. Trading's advertising is very close, a fact that increases the likelihood of confusion between the products as well as to the source, affiliation and trademark association. *See* **Star Financial Services**, 89 F.3d at 10.

6. Evidence of actual confusion.

In suing under any of the three Lanham Acts provisions, a plaintiff need only show that a likehood of confusion is in prospect; a showing of actual confusion is not required. **Perfumania, Inc.**, 279 F.Supp. at 100. (citations omitted). The Court of Appeals for the First Cicuit has explained that "[a] showing of actual confusion is not essential in order to find a likehood of confusion." **Id.** Accordingly, courts have routinely granted injunctions notwithstanding an absence of evidence of actual consumer confusion. **Id.** As a matter of fact, lack of direct evidence of confusion "might be attributable to lack of discovery. In any case, the law only requires a finding of a likelihood of confusion". (Our emphasis). See **Nutrasweet**, 982 F.Supp at 102.

Although no evidence of actual confusion is at hand, pending discovery and investigations could set forth to the attention of this Honorable Court this type of evidence.

7. Defendant's intent in adopting its mark.

This Court has held on various occasions that the federal registration of a trademark places third parties on constructive notice of the ownership of the registered mark. *See* **Veryfine Products, Inc.**, 799 F. Supp. at 254 and **Davidoff Extension, S.A.**, 747 F. Supp at 127. Therefore, "once registration is achieved 'no subsequent adoption and use of the same or a **similar mark** for the **similar goods** can be justified on a claim of good faith'." (Our emphasis). *See* **Davidoff Extension, S.A.**, 747 F.Supp at 127. As a result, constructive notice alone can show that Defendant adopted its mark in bad faith. **Veryfine Products, Inc.**, 799 F.Supp at 254.

The facts of the present case are very similar to the factual scenario that led the *Veryfine* Court to conclude that Defendant sought to profit from Plaintiff's reputation, sales, and popularity when it adopted the infringing mark. In the present case, as in *Veryfine*, Defendant had constructive notice of Borinquen's federally registered trademark before adopting a similar mark for a similar competing product. Borinquen asked Defendants "to cease and desist from selling its infringing products" Just like in *Veryfine*, Defendant "refused to withdraw the product from the market and has not redesigned its labels." **Id.** As a result, it is evident that "said conduct establishes an intent to trade on [Plaintiff's] goodwill, for [Defendant] had 'the affirmative duty to avoid any likelihood of confusion with Plaintiff's trademark which was already federally registered and in use." **Id.**

The similarities do not end there. As in *Veryfine*, defendant, M.V. Trading, adopted such similar designs and labels to those of the Plaintiff that it is apparent that when M.V. Trading adopted its mark it "intended to benefit from [Plaintiff's] success, strong mark, and consumer popularity." **Id**. In effect the uncanny resemblance between the name and trade dress shows that M.V. Trading "inten[ded] to benefit from [Plaintiff's] reputation." See **Volkswagendwerk Atkiengesellschaf**, 814 F.2d at 819.

8. Strength of the mark.

The First Circuit rule is that strong "marks are accorded broader protection against infringement than are "weak" marks." See **Volkswagendwerk Atkiengesellschaft**, 814 F.2d at 819. In "assessing a mark's strength , the trier of fact considers evidence of the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark". *See* **Star Financial Services**, 89 F3d at 11 and **The Keds Corp. v. Renee International Trading Corp.**, 888 F.2d 215, 222 (1 Cir. 1989).

As will be shown, plaintiff meets the aforementioned criteria for a "strong mark". The first factor is satisfied because the "Rica" trademark for crackers has been in constant use for approximately forty-eight (48) years. Furthermore, "a strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." **Jordan K Rand, Ltd.**, 537 F. Supp. at 587. (*citing* ***Exxon Corp. v. Texas Motor Exchange of* Houston**, 628 F.2d 500, 504 (5th Cir. 1980). Our search reveals that this trademark is not used in connection with crackers or cookies products in the United States or Puerto Rico. In addition, the mark "Rica" is renowed in the business and plaintiff promotes it. In light of the above it is clear that "Rica" easily meets the requirements of a strong mark.

### B. Likelihood of success on the merits on the unfair competition/false designation allegations.

Section 43(a) of the Lanham Act governs unfair competition claims. It states in its pertinent part that:

> Any person who, or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol or device. . . or any false designation of origin. . . which –
>
> (A) is *likely to cause confusion*, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of [such person's] goods, services, or commercial activities by another person. . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act. 15 U.S.C. § 1125(a) (emphasis ours).

This Court has held on numerous occasions that "the same facts supporting a suit for trademark infringement will support a suit for unfair competition." **Rand v. Lazoff Bros., Inc.**, 537 F. Supp. at 597. See also, **Veryfine Products, Inc.**, 799 F.Supp. at 256; **Geoffrey, Inc.**, 756 F.Supp. at 667-668. As a result, our analysis of the likelihood of confusion under the trademark infringement cause of action is equally applicable to Borinquen's unfair competition/false designation claim. This makes it unnecessary to repeat the same argument for the unfair competition/false designation of origin cause of action.

### C. Likehood of Success on the Merits on the Dilution claim.

The Federal Trademark Dilution Act of 1995 ("FTDA"), Lanham Act section 43(c), grants protection to "famous" marks against any use of the mark that "causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c). The FTDA provides:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, an to obtain such other relief as is provided in this subsection. 15 U.S.C. § 1125(c)(1).

The FTDA provides a non-exclusive list of eight factors that courts should consider in determining whether a mark is "distinctive and famous." 15 U.S.C. § 1125(c)(1). The eight statutory factors are:

(A) the degree of inherent or acquired distinctiveness of the mark;
(B) the duration an extent of use of the mark in connection with the goods or services with which the mark is used;
(C) the duration and extent of advertising and publicity of the mark;
(D) the geographical extent of the trading area in which the mark is used;
(E) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
(F) the nature and extent of use of the same or similar marks by third parties; and

(G) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

In this case, there is a substantial likelihood that Borinquen will prevail under the FTDA. The mark "Rica" utilized by Borinquen has acquired distinctiveness and is well-recognized in the trading areas and channels of trade. It has been in constant use for approximately forty (48) years and is currently being distributed in Puerto Rico, the Virgin Islands, St. Marteen and the United States, particularly in Florida, Pennsylvania, New York, New Jersey and Connecticut. Furthermore, the Borinquen's mark "Rica" is registered in the U.S. Patent and Trademark Office in its Principal Register and in the State Department of Puerto Rico. It has not been used, up

until now, by any third party. Thus, it is a distinctive and famous mark. M.V. Trading's use of the same mark dilutes the distinctive quality that has been achieved by Borinquen.

2. **ABSENT AN INJUNCTION, BORINQUEN WILL BE IRREPARABLY HARMED.**

A trademark plaintiff who demonstrates a likelihood of success on the merits creates a presumption of irreparable harm. **Perfumania, Inc.**, 279 F.Supp. at 103. Irreparable injury arises because the trademark owner is deprived of its ability to control the nature and quality of a product that the public believes it provides, even if the infringing product is of the same quality as the product sold under the registered trademark. Moreover, trademark infringement damages the mark itself and the owner's goodwill, an intangible value that can never accurately be ascertained. **Id.** Thus, injunctive relief is appropriate when the elements of trademark infringement and unfair competition/false designation of origin are established. *See* **The Keds Corp. v. Renee Intern. Trading Corp.**, supra; **K-Mart Corp. v. Oriental Plaza, Inc.**, 875 907 (1st Cir. 1989); **Boston Athletic Ass'n**, 867 F.2d at 34; **Hypertherm, Inc. v. Precision Products, Inc.** 832 F.2d 697 (1st Cir. 1987); **Volkswagendwerk Atkiengesellschaft**, 814 F.2d at 812. As the First Circuit explained:

> By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated. Hence, irreparable harm flows from an unlawful trademark infringement as a matter of law.

**Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.**, 982 F.2d 633, 640 (1st Cir. 1992).

As demonstrated above, Borinquen has established that it has a very good probability of prevailing on its trademark infringement, unfair competition/false designation of origin and dilution claims. Accordingly, Borinquen has established the irreparable injury necessary for injunctive relief.

3. **THE BALANCE OF EQUITIES FAVORS BORINQUEN.**

The balance of equities favors Borinquen. The injunctive relief Borinquen seeks will not close down Defendant's business but will merely require it to distribute and sell crackers under a name and in a packaging that is not confusingly similar to Borinquen's "Rica" mark and trade dress. Moreover, the "irreparable injury that ... plaintiff has already sustained as a result of the intangible damage done to plaintiff's mark—the symbols of the reputation and goodwill it has developed throughout the years—will continue in the future." **Veryfine Products**, 799 F. Supp. at 257 (*quoting* **Geoffrey Inc.**, 756 F. Supp. at 668 (ellipsis in original). The injury to Borinquen outweighs any harm that Defendant might sustain in being unable to continue marketing its generic swimmer's ear medication with the offending name and trade dress. **Veryfine Products**, 799 F. Supp. at 257.

If defendants are not restrained pending trial the commercial significance of plaintiff's trademark will be undermined with resulting loss of trade and customer goodwill, both of immeasurable nature. Thus, the balance of hardships favors plaintiff. **Perfumania, Inc.**, 279 F.Supp. 2d at 104.

4. **THE PUBLIC INTEREST FAVORS GRANTING PRELIMINARY INJUNCTIVE RELIEF.**

A preliminary injunction would be in the public interest. Consumer confusion is by its very nature, against the public interest. **K-Mart Corp.**, 875 F.2d at 916; **Veryfine Products**, 799 F. Supp. at 258. The injunctive relief Borinquen seeks would prevent further injury to the public interest. **Veryfine Products**, 799 F. Supp. at 258; **Geoffrey Inc.**, 537 F. Supp. at 597.

For the foregoing reasons, the Court should grant Borinquen.'s request for preliminary injunctive relief. The Court should preliminarily restrain Defendant from offering for sale, selling,

marketing or advertising its crackers under the mark "Ricas" or any other confusingly similar mark, and under trade dress that is confusingly similar to Borinquen's trade dress.

## IV. CONCLUSION

**WHEREFORE**, it is respectfully requested that this Honorable Court grants Borinquen's request for the issuance of a preliminary injunction against defendant M.V. Trading.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 6th day of October, 2004.

                                                        s/Laura Beléndez Ferrero
                                                        Laura Beléndez-Ferrero: USDC-PR 216301

                                                        s/Illean Canellas Correa
                                                        Illean Cañellas Correa: USDC-PR 218504

                                                        Attorneys for the Defendant
                                                        **REICHARD & ESCALERA**
                                                        P. O. Box 364148
                                                        San Juan, Puerto Rico 00936-4148
                                                        Telephone (787) 777-8816
                                                        Fax (787) 765-4225
                                                        E-mail: belendez@reichardescalera.com