RECEIVED & FILED

'05 SEP -6  AM 10 40

CLERK'S OFFICE
U.S.DISTRICT COURT
SAN JUAN, P.R.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

BORINQUEN BISCUIT CORP.,

    Plaintiff,

    v.    CIVIL NO. 04-2070 (PG)

M.V. TRADING CORP., ET AL.,

    Defendants.

**OPINION AND ORDER**

Pending before this Court is plaintiff's motion for a preliminary injunction barring defendant M.V. Trading Corp. from distributing its "Ricas" cookie/cracker/biscuit products. (Docket No. 2) For the reasons expounded below, the request for injunctive relief is **GRANTED**, not without cautioning that the present decision does not involve a final decision on the merits.

**I. BACKGROUND**

On October 8, 2004 Borinquen Biscuit Corp. ("Borinquen") filed the instant complaint against M.V. Trading Corp. ("MV") and an unknown defendant, claiming that MV was distributing cookies with the "Ricas" trademark infringing on Borinquen's "Rica" trademark, in violation of its rights under the Lanham Act, 15 U.S.C. § 1141(1) and the Federal Trademark Dilution Act, 15 U.S.C. § 1125 ("FTDA"). Under the Lanham Act and the FTDA, courts are empowered to issue injunctions in order to protect the rights of trademark owners from infringement, dilution or any other

violation of their property rights. 15 U.S.C. §§ 1116 and 1125(c)(1). Borinquen requested such injunctive relief, seeking an order prohibiting MV from selling the "Ricas" cookies. As grounds, Borinquen alleged that the products were similar enough to confuse the public, thereby causing Borinquen irreparable damage. MV opposed the request, arguing that Borinquen had not shown that its descriptive mark had acquired secondary meaning and that, even if it had, there is no likelihood of confusion between the products.

On May 31 and June 7, 2005, the Court held a preliminary injunction hearing, and the parties subsequently submitted their briefs. (Docket Nos. 55 and 57, respectively filed August 2, 2005 and August 5, 2005) The Court now proceeds to evaluate whether the injunction should issue.

## II. DISCUSSION

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d § 2948. The determination of whether this burden has been met rests within the realm of the court's discretion. See Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940); Anheuser-Busch, Inc. v. Teamsters Local No. 633, Nat. Conference of Brewery & Soft Drink Workers, 511 F.2d 1097, 1099 (1st Cir. 1975) (citation omitted), cert. denied, 423 U.S. 875 (1975). Such discretion can manifest itself in a diverse array of forms. Thus, a court is not required to grant the relief sought in its totality, e.g., Elzinga & Volkers, Inc. v. LSSC Corp., 838

F.Supp. 1306 (D.C.Ind. 1993); Maxam v. Lower Siousx Indian Community of Minnesota, 829 F.Supp. 277 (D.C.Minn. 1993), and may impose particular conditions upon the applicant to ensure the fairness and efficiency of the process. Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528 (1960).

The standard for issuing a preliminary injunction is the oft-quoted four factor test: (1) The likelihood of success on the merits; (2) [t]he potential for irreparable injury; (3) [a] balancing of the relevant equities (most importantly, the hardship to the nonmovant if the relief issues as contrasted with the hardship to the movant if relief is withheld); and (4) [t]he effect on the public interest of a grant or denial of the relief. Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); Ross-Simmons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996); New Comm Wireless Services, Inc. v. Sprintcom, Inc. 287 F.3d 1, 9 (1st Cir. 2002). "Of these four factors, the probability-of-success component [is] ... critical in determining the propriety of injunctive relief." Lancor v. Lebanon Housing Authority, 760 F.2d 361, 362 (1st Cir. 1985).

## A. Probability of Success on the Merits

Establishing trademark infringement requires a showing the plaintiff uses, and thus owns, the mark in question; that the defendant's mark is similar to or the same as the plaintiff's mark; and that prospective buyers of the product in question are likely to be confused as to the product's source. See 15 U.S.C. § 1125(a); Taco Cabana Int'l, Inc. v. Two Pesos,

Civil No. 04-2070 (PG)                                                    Page 4

Inc., 505 U.S. 763, 769 (1992); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 43 (1st Cir. 1998).

At the outset, defendant MV contends that, before a preliminary injunction can issue, plaintiff has the burden of proving that its name has acquired a "secondary meaning" that is, that a buyer using the "Rica" name intends to convey to the seller that he specifically wants a "Rica" product. See Pic Design Corp. v. Bearings Specialty Co., 436 F.2d 804, 807 (1st Cir. 1971). Under federal law, however, a registered trademark like "Ricas" is "prima facie evidence ... of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate of registration." Id. (quoting 15 U.S.C. § 1057(b) (1964)); Docket No. 1, Ex. A.

A plaintiff is not entitled to a preliminary injunction on a trademark infringement claim unless it can persuade the district court that it is likely to demonstrate consumer confusion. See WCVB-TV v. Boston Athletic Ass'n, 926 F.2d 42, 44 (1st Cir. 1991). "[T]he law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." International Assoc. of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center, 103 F.3d 196, 201 (1st Cir. 1996). In order to show whether there is a likelihood of confusion, the inquiry in this Circuit focuses on the following eight factors:

> (1) similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective

Civil No. 04-2070 (PG)                                                               Page 5

> purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; [and] (8) the strength of the plaintiff's mark. No one factor is necessarily determinative, but each must be considered.

I.P. Lund Trading, 163 F.3d at 43 (quoting Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 29 (1st Cir. 1989)).

To determine whether the marks in question are similar for purposes of trademark infringement, the First Circuit has examined the appearance, packaging, coloring, spelling, and pronunciation. See e.g. Pignons S.a. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). "Similarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." Boston Athletic Ass'n v. Sullivan, 687 F.2d 22, 29 (1st Cir. 1989).

Here, the similarity-of-the-marks inquiry shows that the marks are indeed similar in the relevant respects. A cursory inspection reveals at first glance two rectangular packages colored in red, white and yellow, with either the word "Rica" or "Ricas." Compare Docket No. 1, Ex. E with Ex. C. A more deliberate inspection uncovers differences such as the fact that MV's mark consists of the word "Ricas" in red letters on a white circle whereas Borinquen's mark is the word "Rica" in white letters on a red circle. The fonts and point sizes vary somewhat, and of course, one sees that MV's product is by Nestle and Borinquen's by Sunland. Nevertheless, both prominently display crenulated yellow crackers with tiny indentations that appear nearly identical on the packaging. Id.

Furthermore, the spelling of the marks is largely the same, with one being in the plural and the other singular. Given the marked tendency here

Civil No. 04-2070 (PG)                                                    Page 6

in the District of Puerto Rico to aspirate the final "s" and often the final syllable in the pronunciation of a word, the Court could also take judicial notice that the two words are pronounced the same.

Because similarity is "determined on the basis of the total effect of the designation, rather than a comparison of individual features," the Court finds that the marks are similar.  Here, the trademark's symbolic components are highly proportional, and since the parties "offer virtually the same goods ... under this factor, there is a strong likelihood of confusion."  Boston Athletic Ass'n, 867 F.2d at 30 (quoting Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 818 (1st Cir. 1987)(internal citations omitted).

However, the goods themselves are not so similar.  Borinquen points out that in Spanish, all cookies, crackers and biscuits are simply called "galletas," but MV rightly distinguishes its product as salty crackers from Borinquen's semi-sweet cookies.  That said, as Borinquen maintains, both products fall under the same category of goods under trademark law, International Class 30.  Docket No. 49 at 13-14.  In addition, Borinquen testified as to its intent to expand its product line to include "Rica Bits" also a salty cracker, and that it has had to shelve the plans since the introduction of MV's "Ricas."  Id. at 14.  Moreover, a new customer could not taste the difference before making his or her decision.

The Court analyzes the next three factors together.  See Perfumania, Inc. v. Perfulandia, Inc., 279 F.Supp.2d 86, 99 (D.P.R. 2003) (citing inter alia Star Fin. Services, Inc. v. AASTAR Mortgage, 89 F.3d 5, 10 n.3 (1st Cir. 1996), for proposition that the relationship between the parties'

channels of trade, the relationship between the parties' advertising, and the classes of prospective purchasers should be analyzed jointly). It is undisputed that Borinquen and MV operate in the same trade. See Docket No. 50 at 15. While MV claims that the Court has not seen enough to determine whether the parties use the same channels of advertising, both parties have submitted highly similar "shoppers," supermarket advertising circulars showing that "Rica" cookies are announced as "Ricas." (Docket no. 42 at 34-38)

As to whether the two share the same classes of prospective purchasers, the Court finds that these are identical, inasmuch as the "galletas" are located in the same supermarket aisle, even next to each other. (Docket No. 42 at 45) To be sure, MV argues that their product is a salty cracker and Borinquen's a sweet cookie; however, given that both appear in the same supermarket aisle and even next to each other, the Court is forced to conclude that the products share the same class of customers.

On the sixth factor, while plaintiff Borinquen presented no evidence of actual confusion, neither was the Court convinced by the results of MV's customer survey offered to prove that there is no confusion. (Docket No. 43 at 4) In the main, the Court finds the survey flawed because it is essentially challenging customers to try and spot the differences between the two boxes-it was not designed to identify whether a potential customer was in fact confused. Furthermore, the survey's sample minute sample size of 100 persons does not lend it great confidence, and neither does the elevated 10% margin of error. Id. at 4, 25.

To succeed at this stage, a plaintiff need only show that there is a likelihood of confusion -- a showing of actual confusion is not required. Perfumania, 279 F.Supp. at 100; Nutrasweet Co. v. Venrod Corp., 982 F.Supp. 98, 102 (D.P.R. 1997). Indeed, a likelihood of confusion exists in "circumstances in which the ordinary consumer actually confronts (or probably will confront) the conflicting mark." Machinists and Aerospace Workers, 103 F.3d at 201.

Here, the similarity of the marks and their proximity to one and other on the supermarket shelf contribute greatly to the likelihood of confusion. Given that situation, and juxtaposing it with the greater likelihood of confusion among unsophisticated customers, see e.g. 875 F.2d 1026, 1036 (2d Cir. 1989) or simply harried grocery store customers who exercise a lesser standard of purchasing care, e.g. McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1137 (2d Cir. 1979), the Court finds that there is a sufficient likelihood of confusion.

The last two factors are defendant's intent and the strength of mark. In measuring intent, evidence of any bad intent is not required in an infringement case. See STAR Financial Services, Inc., v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996). A trademark plaintiff need not show intent to deceive or fraudulent intent because if "potential customers are confused, no amount good faith can make them less so." Polo Fashions, Inc. v. Fernandez, 655 F.Supp. 664, 667 (D.P.R. 1987) (citation omitted). "[S]trictly, intent, or lack thereof, does not affect the eyes of the viewer." Lund Trading, 163 F.3d at 44 (quoting Chrysler Corp. v. Silva, 118 F.3d 56, 59, n.3 (1st Cir. 1997).

It is well established, however, that "if there is proof that a defendant intentionally set out to deceive or mislead consumers, a presumption arises that customers in fact have been deceived." Cashmere & Camel Hair Manufacturers Institute v. Saks Fifth Avenue, 284 F.3d 302, 316 (1st Cir. 2002). Given the likelihood of consumer confusion, the Court finds that defendant's intent or lack thereof in this matter cannot overcome the fact that customers may well choose mistakenly.

As for the strength of plaintiff's mark, the Court finds that MV has not rebutted that "Rica" is the only cookie, cracker or biscuit trademarked under that name in the United States. In order to evaluate a mark's relative strength the First Circuit has used the following factors: "the length of time a mark has been used and the plaintiff's relative renown in its field; the strength of the mark in plaintiff's field of business ... and the plaintiff's actions in promoting its mark." Boston Athletic Ass'n, 867 F.2d at 32 (internal citations omitted). Sunland has owned this trademark for a significant length of time, since 1969. While the Court is unable to evaluate the strength of the mark, the fact that it is the "Rica" is the only cookie, cracker or biscuit trademarked under that name in the United States militates in favor of its strength. The Court is also persuaded that plaintiff pursues a concerted advertising strategy in accordance with industry standards. See Docket No. 49 at 22. As such, the Court finds that the "Rica" mark is strong enough to merit protection.

Having evaluated the relevant factors, the Court holds that the actual differences in the goods and any lack of intent on MV's part do not outweigh the likelihood of confusion, similarity of the marks, the close

relationships in trade channels, advertising and between prospective buyers, and the strength of the plaintiff's mark. As such, plaintiff has demonstrated a sufficient likelihood of success on the merits.

## B. Irreparable Harm to Plaintiff

In the trademark context, "irreparable harm may be shown even in the absence of actual injury to plaintiff's business based on plaintiff's demonstration of a likelihood of success on the merits...." Lund Trading, 163 F.3d at 27. Moreover, here, Borinquen has shown that it has suffered a concomitant decrease in market share since the launch of the "Ricas" products. (Docket No. 42 at 51-54) The Court will also credit Borinquen's assertions of attendant loss of profits, goodwill and reputation, which cannot be quantified. (Docket No. 49 at 25)

## C. Balance of Hardships

Trademark law is designed to "quickly and easily assure a potential customer that *this* item -- the item with its mark -- is made by the same producer as other similarly marked items that he or she liked in the past." Qualitex Co. v. Jacobson Products Co., Inc., 514 U.S. 159, 164(1995) (emphasis in original). In this manner, a producer who has cultivated a brand name and trademark, with its signature colors and packaging is protected from another producer reaping "financial, reputation-related rewards associated with a desirable product." Id. Whether intentionally or not, at this stage, these latter effects appear to be the tangible result of defendant's actions. The Court is aware that "Ricas" constitute

the majority of defendant MV's sales. (Docket No. 50 at 18) However, the Court has already concluded that there exists a likelihood of confusion, and given that Borinquen has distributed "Rica" products for over thirty years whereas MV has only utilized the "Ricas" mark for over a year, the Court finds that the balance of hardships tips in favor of plaintiff Borinquen.

### D. Public Interest

In this matter specifically, the Court believes that the public interest factor weighs heavily in favor of plaintiff. In order to protect the consuming public who have little if no control over the advertising that induces them to confusion between "Rica" and "Ricas," the Court reasons that injunctive relief is proper under the circumstances.

Furthermore, trademarks being a species of property, these should be protected as a matter of public policy. See Volswagenwerk 814 F.2d at 820. By protecting the "Rica" trademark against confusion, the Court protects the public from relying on a misused trademark. Cf. Burger King v. Hall, 770 F.Supp. 633, 640 (S.D.Fl. 1991).

### III. CONCLUSION and ORDER

Having determined that plaintiff is likely to succeed on the merits, that plaintiff faces irreparable injury, that the balance of hardships favors plaintiff and that injunctive relief is in the public interest, plaintiff's request a preliminary injunction pending trial (Docket No. 2), is hereby **GRANTED**. It is therefore **ORDERED** as follows:

Civil No. 04-2070 (PG)                                                    Page 12

Defendant M.V. Trading Corp., and their agents, servants, employees and attorneys, and those persons in active concert and participation with them, who receive actual notice of this Preliminary Injunction, by personal service or otherwise, are hereby enjoined and restrained, durig the pendency of the above styled and numbered action, from distributing, importing, advertising, marketing or selling any cracker or cookie or biscuit product under the name "Ricas" in Puerto Rico, and shall immediately cease using any and all "Ricas" trademarks and servicemarks in any trade channel in Puerto Rico.

M.V. Trading Corp. shall immediately recall from distribution all cracker and cookie products under the name "Ricas". Furthermore, M.V. Trading Corp. shall immediately remove or cause removal of all cracker, cookie and biscuit products under the name "Ricas" from store shelves in Puerto Rico.

Plaintiff Borinquen Biscuits Corp. shall post with the Clerk of Court a bond in the amount of $100,000 for payment of any cost or damages that may be incurred by defendant M.V. Trading Corp. in the event that defendant M.V. Trading Corp. is found to be wrongfully enjoined.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 2, 2005.

                                                    *[signature]*
                                              JUAN M. PÉREZ-GIMÉNEZ
                                              U.S. District Judge